UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY TOREAL TOWNSEND,

       Petitioner,

v.                                   Case No. 08-15159

BARRY D. DAVIS,                     HON. MARIANNE O. BATTANI

       Respondent.
_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND DENYING THE PETITION FOR THE WRIT OF
HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

      Petitioner Tony Townsend filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, alleging various claims arising out of his state court criminal trial. (Doc. 1). The Court referred this matter to Magistrate Judge Paul J. Komives for Report and Recommendation (R&R). (Doc. 7). Magistrate Judge Komives issued his R&R, recommending that the Court deny the petition and deny Townsend a certificate of appealability. (Doc. 15). Petitioner objects to the R&R. (Doc. 21). For the reasons that follow, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the R&R, and **DENIES** the writ and the certificate of appealability.

**I.    BACKGROUND**

      Petitioner Tony Townsend was convicted of first degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a), first degree felony-murder, MICH. COMP. LAWS § 750.316(1)(b); possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in Wayne County Circuit Court. Townsend was sentenced to life in

prison for the first degree felony-murder conviction, 40-60 months in prison for the felon in possession of a firearm conviction, and two years in prison for the felony-firearm conviction.[1]

Townsend appealed as of right to the Michigan Court of Appeals. Through counsel, Petitioner raised the following five claims:

1. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE DEFENDANT/APPELLANT A FAIR TRIAL WHEN IT BARRED THE DEFENSE FROM EXERCISING A PEREMPTORY CHALLENGE OF A PROSPECTIVE JUROR DESPITE THERE BEING NO OBJECTION FROM THE PEOPLE.

2. THE DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT JAILED A TESTIFYING WITNESS AND THEN COMMENTED TO THE NEWS MEDIA THAT THE WITNESS WAS LYING AND SHOULD NOT BE BELIEVED.

3. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED THE DEFENDANT/APPELLANT A FAIR TRIAL WHEN IT LIMITED THE EXAMINATION OF A KEY WITNESS REGARDING A CRITICAL CONVERSATION AND BY NOT REQUIRING THE PEOPLE TO PRODUCE AN ENDORSED RES GESTAE WITNESS.

4. THE TRIAL COURT ERRED AND DENIED THE DEFENDANT/APPELLANT A FAIR TRIAL WHEN IT ADMITTED THE PURPORTED STATEMENT OF THE DEFENDANT/APPELLANT DESPITE EVIDENCE THAT THE STATEMENT HAD BEEN COERCED.

5. THE TRIAL COURT ERRED AND DENIED THE DEFENDANT/APPELLANT A FAIR TRIAL WHEN IT ADMITTED AS SUBSTANTIVE EVIDENCE THE PRIOR TESTIMONY OF SEVERAL WITNESSES WHO WERE PRESENT AT COURT AND WHO TESTIFIED.

(Doc. 8-13 at 43). The court of appeals rejected Townsend's arguments and affirmed his conviction and sentence. See, People v. Townsend, No. 252371, 2006 WL 287856 (Mich.

---

[1] The trial court vacated petitioner's first-degree premeditated murder conviction on double jeopardy grounds.

2

Ct. App. Feb. 7, 2006) (per curiam).  Proceeding *pro se*, Townsend sought leave to appeal those five claims to the Michigan Supreme Court.  The Supreme Court denied his application for leave to appeal in a standard order.  See, People v. Townsend, 718 N.W.2d 348 (Mich. 2006).

Townsend then filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following five claims:

1. DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED WHERE THE TRIAL COURT IMPROPERLY COMBINED STEPS TWO AND THREE OF THE BATSON INQUIRY, PLACED THE BURDEN OF PERSUASION OF BATSON ON DEFENDANT AND, THEREFORE, IMPROPERLY DENIED DEFENDANT OF HIS RIGHT TO PEREMPTORILY REMOVE JUROR HILL; THUS, REQUIRING REVERSAL.

2. DEFENDANT'S FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHERE THE TRIAL COURT CLEARLY ERRED IN DETERMINING THAT DEFENDANT HAD FAILED TO MAKE A PRIMA FACIE SHOWING OF DISCRIMINATION IN THE FIRST STEP OF THE BATSON INQUIRY.

3. DEFENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED WHERE THE TRIAL COURT ERRED IN NOT QUESTIONING JURORS ABOUT THE EFFECT UPON THEM OF PREJUDICIAL, EXTRANEOUS INFORMATION.

4. DEFENDANT WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO (A) OBJECT TO THE ADMISSION OF THE PORTION OF OFFICER MCCALISTER'S PRELIMINARY EXAMINATION TRANSCRIPT THAT GAVE IMPROPER OPINION TESTIMONY THAT VIOLATED DEFENDANT'S DUE PROCESS RIGHTS; (B) OBJECT TO THE TESTIMONY OF THE VICTIM'S MOTHER, AND THE VICTIM'S PHOTOGRAPH, AS IRRELEVANT, AND OBJECT TO THE PHOTOGRAPHS AND COCKING OF FIREARMS THAT WERE MORE PREJUDICIAL THAN PROBATIVE; (C) INVESTIGATE AND CALL KEY WITNESSES TO SUPPORT DEFENSE THEORY; (D) PRODUCE IMPORTANT CHARACTER EVIDENCE TO IMPEACH OFFICER THOMAS; (E) OBJECT TO THE NUMEROUS INSTANCES

> OF PROSECUTORIAL MISCONDUCT, AND; (F) DO ALL THE ABOVE WHICH, WHEN CONSIDERED CUMULATIVELY, PREJUDICED DEFENDANT AND REQUIRES A NEW TRIAL.
>
> 5. DEFENDANT WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHERE HIS APPELLATE COUNSEL FAILED TO RAISE THE ABOVE ISSUES; THUS, HE HAS ESTABLISHED GOOD CAUSE FOR RELIEF.

(Doc. 8-16 at 19). The trial court found Petitioner's claims meritless and denied the motion. (Id. at 72). The court of appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Townsend, 769 N.W.2d 201 (Mich. 2008); People v. Townsend, No. 280287 (Mich. Ct. App. Apr. 16, 2008).

Townsend's *pro se* habeas petition consists of the ten claims he raised in the state courts. (Doc. 1). In assessing the merits, the Magistrate Judge relied on the facts as recited by Michigan Court of Appeals on Petitioner's direct appeal:

> Defendant's convictions arise out of the fatal shooting of Detroit Police Officer Scott Stewart on the early morning of August 11, 2002. Defendant had attended a party at the home of his sister, Linda Little, and her husband and defendant's codefendant, Kenneth Little, on Corbett Street in Detroit. By the time Stewart and two other officers arrived in response to shots they heard earlier coming from this location, the party had swelled to over one hundred people. Stewart was in the process of arresting Little, when he was fatally shot in the head.

(Doc. 15 at 5). The Magistrate Judge also reviewed and summarized the twenty-eight pages of facts recited in Petitioner's brief on direct appeal:

> [T]he prosecution's evidence broke down into four general categories. First, several officers testified as to the circumstances leading to their arrival at the scene and actions once they arrived. Generally, they testified to arriving at the scene, attempting to arrest or arresting one or more people, and hearing gunshots. Some of the officers were able to describe in more detail the shooting of Officer Stewart, testifying that Stewart was in the process of arresting Little at the time. All of the officers testified that there

4

were a number of people at the scene, and several described the scene as chaotic. None of the officers was able to identify petitioner as the shooter.

The second category of witnesses consisted of various people at the scene at the time of the shooting. These witnesses were, for the most part, petitioner's friends, relatives, or acquaintances. At trial, they generally testified favorably to petitioner. However, they were each impeached with either prior statements to the police or prior testimony given in response to investigative subpoenas, in which they had implicated petitioner as the shooter in various ways. These witnesses generally disavowed their earlier statements, indicating that they had been coerced or fabricated by the police.

The third category of evidence consisted of various forensic testimony. Most notably, clothes recovered from petitioner's home was found to have gunshot residue, and nine millimeter ammunition was recovered from petitioner's home.

Finally, the prosecution presented evidence of petitioner's incriminating statements to the police. Lieutenant Roy McCalister was determined to be an unavailable witness, and the prosecution was permitted to introduce his testimony from the preliminary examination. At the preliminary examination, Lt. McCalister testified that he advised petitioner of his rights, and that petitioner initially denied still being at the scene when the officers arrived to break up the party. Lt. McCalister did not record this statement, because he did not believe it to be the truth. After it became apparent to Lt. McCalister that petitioner would not give an incriminating statement, he allowed petitioner to speak with his fiancé. Officer Michael Carlisle testified that he first met petitioner at about 8:30 a.m. on the morning of the shooting and brought him a sandwich at that time. He conceded that petitioner had first given an exculpatory statement, but that this statement had not been reduced to writing. Officer Derrick Thomas testified that later in the day he advised petitioner of his rights and took a ten page statement from petitioner, written by Thomas with each page initialed by petitioner. The statement indicated that petitioner saw someone pointing a gun at Little, so he shot once at the person who was pointing the gun at Little. He did not know that Stewart, who was in plain clothes, was a police officer. Thomas testified that petitioner added, in his own handwriting: "I am deeply sorry for what I have done. I didn't know he was an officer of the law. I'm sorry; please forgive me." Public Safety Officer Antonio Trupiano testified that he was working as a detention officer at the jail, and that petitioner indicated to Trupiano that he was sorry and didn't know that Stewart was a police officer.

Petitioner testified on his own behalf. He denied making the statement to the police, and claimed to have signed it only because he was told he would be able to go home if he did so. He denied any involvement in the

5

shooting death of Stewart, and claimed that his words of remorse were merely an expression that he was sorry that an officer had been killed, not that he was the killer.

(Id. at 5-7).

The Magistrate Judge issued a comprehensive fifty-two page R&R, recommending that the Court deny Townsend's petition and deny him a certificate of appealability. (Doc. 15). Petitioner's objections to that R&R are now before the Court. (Doc. 21).

## II. STANDARD OF REVIEW

### A. Objections to a Magistrate Judge's Report and Recommendation

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id. The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006). Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the R&R that are legitimately in contention. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir.1986) (per curiam). "The objections must be clear enough to enable the district court to discern

those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings ... believed [to be] in error' are too general." Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

### B. Habeas Corpus

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law, or if the state court reaches a substantially different conclusion than the Court based upon a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal habeas court may not, however, find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at

411. Rather, a habeas petitioner must demonstrate that the state court's application of clearly established federal law to the facts of his case was objectively unreasonable. Price v. Vincent, 538 U.S. 634, 641 (2003).

### III. ANALYSIS

Petitioner filed a thirty-four page document titled "My Objections to the Finding of the Recommendation." (Doc. 1). Having carefully reviewed the arguments therein, the Court concludes that they are not proper "objections" under 28 U.S.C. § 636. Petitioner explains he is "respectfully objecting to the reasoning that was expressed by the prosecution stating that I should be denied a petition for an application for a writ of habeas corpus." (Id. at 1). The objections read as a second reply to Respondent's response and not as specific objections to the Magistrate Judge's resolution of the numerous issues presented in the petition. For example, Petitioner argues that the Court should consider the merits of his habeas claims regardless of any procedural default alleged by Respondent. (Id. at 3-4). The Magistrate Judge agreed with this contention, stating, "[g]iven that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted." (Doc. 15 at 9). It is unclear to the Court why Petitioner's argument has been reasserted in the objections.

To the extent the Court can construe Petitioner's arguments as "objections" to the Magistrate Judge's findings, the "objections" are not sufficiently specific to merit consideration. An objection is sufficiently specific when it explains and cites the portions of the R&R the objecting party finds problematic. Robert v. Tesson, 507 F.3d 981, 994 (6th Cir. 2007) (citation omitted). Here, Petitioner has simply filled a general disagreement with

nearly every section of the R & R, for the reasons previously articulated in his petition. The Court discovered a general pattern throughout each objection on a specific issue: Petitioner indicates his position, presents relevant law (by quoting large portions of the R&R), but does not specifically dispute the Magistrate Judge's analysis and contrary conclusions. The Court treats Petitioner's non-specific opposition to the Magistrate Judge's resolution of the issues as general objections.

The purpose behind the Magistrate Judge's R&R is judicial economy. Thomas v. Arn, 474 U.S. 140, 147 (1985). This purpose is not served when a party files general objections:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

Zimmerman v. Cason, 354 Fed.Appx. 228, 230 (6th Cir. 2009) (quoting Howard v. Secretary of Health and Human Serv., 932 F.2d 505, 509 (6th Cir. 1991)); see also, Curry v. City of Mansfield, Ohio / Wastewater Treatment Plant, 201 F.3d 440 (Table) (6th Cir. 1999) (faced with non-specific objections, "[t]he district court's *sua sponte de novo* review duplicated the work of the Magistrate, contravening the purposes of the Magistrate's Act...."). Petitioner's "objections" ignore the Magistrate Judge's well-reasoned disposition of the issues and do not clearly identify any legal analyses which were in error. Instead, he attempts to relitigate virtually every issue in the R&R by furthering a general disagreement to each of the Magistrate Judge's conclusions. Accordingly, the "objections" are overruled as improper.

9

Nevertheless, given Petitioner's *pro se* status, the Court has exhaustively reviewed each "objection" raised and attempted to discern the basis of Petitioner's argument. Each objection, even liberally construed as proper, is nonetheless without merit and overruled. Furthermore, to the extent the Court has identified specific objections, the Court "is not required to articulate all of the reasons it rejects a party's objections." Thomas v. Halter, 131 F.Supp.2d 942, 944 (E.D.Mich.2001); see also, Tuggle v. Seabold, 806 F.2d 87, 92 (6th Cir.1986).

### A. Batson Claims (Claims I, VI, and VII)

In Claims I and VI, Petitioner contends that the trial court violated his due process rights when it improperly precluded him from exercising a peremptory challenge. (Doc. 21 4-7). The Magistrate Judge disposed of these claims under Rivera v. Illinois, 129 S.Ct. 1446 (2009). In Rivera, as here, the defendant challenged the state trial court's denial of his exercise of a peremptory challenge based on the trial court's finding that the peremptory challenge was exercised on the basis of the juror's race, in violation of Batson v. Kentucky, 476 U.S. 79 (1986) (holding that the Equal Protection Clause prohibits race-based peremptory challenges). The Supreme Court concluded that so long as the jury actually seated was fair and impartial, the erroneous application of Batson to deny a defendant's exercise of a peremptory challenge does not raise a constitutional claim. Rivera, 129 S.Ct. at 1453-54. The Magistrate Judge concluded that, regardless of whether the trial court applied Batson properly, Petitioner did not raise the specter of a due process violation because he failed to show that Hill (the juror who escaped Petitioner's peremptory challenge) was actually biased or that the trial judge deliberately misapplied the law or acted in an arbitrary or irrational manner. (Doc. 15 at 14-15).

Petitioner does not object to the Magistrate Judge's application of Rivera. The objections do not even mention that case. Moreover, the Court cannot reasonably construe the arguments advanced as an attack on the Magistrate Judge's interpretation and application of Rivera. The Court agrees with the Magistrate Judge's discussion of Rivera and adopts the recommendation that Petitioner is not entitled to habeas relief on Claims I and VI.

In Claim VII, Petitioner argues that the trial court violated his due process rights when it allowed the prosecutor to commit Batson error and exercise a peremptory challenge based on race. (Doc. 21 at 7-10). During the first day of jury selection, Petitioner's counsel objected to the prosecution's exercise of its peremptory challenges by noting that eight of the twelve challenges targeted black jurors. (Doc. 8-7 Trial Transcript II at 4-5). The trial court overruled the objection, finding no pattern of discrimination as both sides excused some white and some black jurors. Id. The Magistrate Judge properly noted that the trial court's fact-finding on discriminatory intent (alternatively "step-one" of the Batson analysis[2]) is entitled to a presumption of correctness, absent clear and

---

[2] In evaluating Batson claims, a court must follow a three-step process:

> First, the [the objecting party] must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the [opposing party] to articulate a race neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the [objecting party] has carried his burden of proving purposeful discrimination.

Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (plurality opinion) (citations omitted) (citing Batson, 476 U.S. at 96-98); see also, Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008).

11

convincing evidence to the contrary. (Doc. 15 at 15-16). The Magistrate Judge concluded that Petitioner's strongest argument on this issue, the "eight-out-of-twelve" statistic, was insufficient to upset the trial court's step-one determination. Id.

Petitioner's "objection" consists of little more than a restatement of two arguments already advanced: the "eight out of twelve" statistic and the racial identities of Petitioner (black) and the murder victim (white) show that the prosecution based its challenges solely on race. Petitioner failed to specify any error in the Magistrate Judge's resolution of those arguments. Notably, Petitioner does not disagree with the presumption of correctness afforded to the trial court's fact-finding regarding discriminatory intent. See, Rice v. Collins, 546 U.S. 333, 338-39 (2006); Miller-El v. Dretke, 545 U.S. 231, 240 (2005). The Magistrate Judge correctly concluded that Petitioner's had not presented any clear and convincing evidence to rebut the trial court's factual finding on discriminatory intent at step-one on the Batson analysis. Petitioner is not entitled to habeas relief on Claim VII.

### B.     Extraneous Jury Influence (Claim VIII)

Petitioner claims the trial court violated his due process rights when it failed to question jurors about whether they had seen a particular newspaper article which reported that the trial judge in his case, outside the presence of the jury, jailed a defense witness for perjury. (Doc. 21 at 10-13). The Magistrate Judge rejected Petitioner's claim because the trial court repeatedly instructed the jurors that they should decide the case only the evidence presented in court, Petitioner presented no evidence that any juror read the article, and even if they did, the article merely revealed facts the jury had witnessed firsthand in the courtroom (witness committed perjury when her trial testimony unambiguously conflicted with her prior sworn statements). (Doc.15 at 24).

Petitioner begins his objection by quoting heavily from the R&R's discussion of the applicable law and expressly agrees that in order to be entitled to habeas relief on this claim, he must show both that the jury was exposed to that newspaper article and that the article was prejudicial. The remainder of the objection, however, simply ignores the Magistrate Judge's discussion of how Petitioner failed to make the required showings. For example, Petitioner claims that the trial judge never instructed the jury to avoid media reports regarding the case. (Doc. 21 at 12). The record clearly undermines this contention. The Magistrate Judge chronicled the trial judge's numerous instructions to the jury that it should not follow news reports and should base its verdict solely on the evidence presented in the courtroom. (Doc. 15 at 22-24). Furthermore, even assuming the jurors read the article, Petitioner cannot establish prejudice. Petitioner argues the article prejudiced the defense because it shows that the trial court thought a defense witness was not credible. The Magistrate Judge already reviewed and rejected that argument. (Id. at 22). The judge's comments were nothing more than an observation that the witness committed perjury because two testimonies were directly contradictory. The judge did not state which testimony he thought was the "truth." Petitioner's objections do not sufficiently address the R&R's analysis of the prejudice issue. Accordingly, the Court adopts the Magistrate Judge's conclusion and finds that Petitioner is not entitled to habeas relief on this claim.

### C. Ineffective Assistance of Counsel (Claims IX & X)

In Claim IX, Petitioner contends that his trial counsel was ineffective for failing to: (1) object to the introduction of Lt. McCallister's preliminary examination testimony; (2) object to the testimony of the victim's mother and the introduction of photographs; (3) investigate and call key witnesses; (4) produce character evidence to impeach Officer Thomas; and

13

(5) object to prosecutorial misconduct. (Doc. 21 at 14-28). Petitioner also argues the cumulative effect of the counsel's deficient performance denied him a fair trial. To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984); Bigelow v. Williams, 367 F.3d 562, 570 (6th Cir. 2004). The R&R concluded that Petitioner is not entitled to habeas relief on these claims. (Doc. 15 at 40-48). The Court agrees.

Consistent with the general pattern, Petitioner makes no effort to set forth a discrete objection to the Magistrate Judge's treatment of his ineffective assistance of counsel claims. The Magistrate Judge soundly rejected Petitioner's contention that his trial counsel was ineffective. The objections simply ignore the Magistrate Judge's thorough discussion of counsel's performance with respect to each of the five grounds Petitioner raises. Moreover, Petitioner entirely overlooks the R&R's findings on prejudice. On each of the five grounds, the Magistrate Judge found that Petitioner had failed to establish "a reasonable probability" that but for his counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner does not set forth any reasoned argument how the Magistrate Judge may have erred in this conclusion. Consequently, for the reasons fully articulated by the Magistrate Judge, Petitioner's ineffective assistance of trial counsel claims are not sustainable. Furthermore, though not specifically addressed in the R&R, Petitioner's "cumulative effect" claim fails because he has not established that trial counsel committed a single constitutional error. Campbell v. United States, 364 F.3d 727, 736 (6th Cir. 2004) (counsel is not ineffective based upon the cumulative effect of non-errors).

In Claim X, Petitioner argues that his appellate counsel was ineffective for failing to raise his motion for relief from judgment claims on direct appeal. (Doc. 21 at 28-32). To succeed on a claim of ineffective assistance of appellate counsel, a Petitioner must show that the claims appellate counsel failed to raise would have succeeded on appeal. Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (citing Strickland, 466 U.S. at 694); McCleese v. United States, 75 F.3d 1174, 1180 (7th Cir.1996). Because Petitioner cannot carry his burden with respect to the post-conviction motion claims, *see supra*, he cannot show that he was prejudiced by appellate counsel's performance.

### D.   Claims II, III, IV, & V

The Court finds no objections to the R&R's conclusion that Petitioner is not entitled to habeas relief on Claims II, III, IV & V. Accordingly, Petitioner has waived his right to *de novo* review of these claims. The Court accepts the Magistrate Judge's recommendation to deny habeas relief on Claims II, III, IV & V.

### E.   Certificate of Appealability

Petitioner furthers only a general objection to the Magistrate Judge's recommendation concerning his certificate of appealability. (Doc. 21 at 33). Petitioner's general objection does not meet the applicable standard. See, Spencer, 449 F.3d at 725; Miller, 50 F.3d at 380. Having carefully considered the petition, the answer, the R&R, and Petitioner's objections, the Court concludes that no reasonable jurist would disagree with the Magistrate Judge's initial recommendations, or with this Court's conclusion to deny relief on all claims. The Court adopts the Magistrate Judge's recommendation on this issue as well.

## IV.     CONCLUSION

For the reasons stated above, the Court **OVERRULES** Petitioner's objections (Doc. 21), **ADOPTS** the Report & Recommendation in its entirety (Doc. 15), **DENIES** the Petition for the Writ of Habeas Corpus (Doc. 1).

Because this decision is adverse to Petitioner, the Court is obliged under Rule 11 of the Rules Governing Section 2254 Proceedings to "issue or deny a certificate of appealability." Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted).

For the reasons stated in the R&R, the Court concludes that reasonable jurists would not debate its conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court **DENIES** Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

                                                       s/Marianne O. Battani

                                                       MARIANNE O. BATTANI
                                                       UNITED STATES DISTRICT JUDGE

**DATED:** March 23, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were served upon Petitioner and counsel of record on this date by ordinary mail and electronic filing.

s/Bernadette M. Thebolt<br>
DEPUTY CLERK